FILED
IN THIS OFFICE
AUG 2 4 2026
Clerk U.S. District Court
Greensboro, NC

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| **DR. DERRICK BARBEE, Pro Se**<br><br>Plaintiff,<br><br>v.<br><br>**CHATHAM COUNTY BOARD OF EDUCATION,**<br><br>Defendant. | Civil Action No. 1:26CV865<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dr. Derrick Barbee ("Plaintiff" or "Dr. Barbee"), proceeding pro se, brings this action against Defendant Chatham County Board of Education ("Defendant" or "Board") and alleges as follows:

# I. NATURE OF THE ACTION

1. Plaintiff is an African American male mathematics educator who has been employed by Defendant at Northwood High School since August 2016. He brings this action under Title VII of the Civil Rights Act of 1964, as amended, for race discrimination, sex discrimination, and retaliation.

2. This action principally concerns employment treatment during the 2025–2026 school year, including Plaintiff's removal from the workplace on December 5, 2025, heightened administrative scrutiny, differential treatment, and Defendant's response to Plaintiff's complaints of discrimination and retaliation.

3. Plaintiff does not contend that every disagreement, criticism, investigation, or administrative action during his employment independently constituted unlawful discrimination. Earlier events are alleged where relevant to decisionmaker knowledge, prior protected activity, comparator treatment, motive, or pretext.

4. The principal school-level decisionmaker relevant to Plaintiff's timely claims was Principal Wynne Youngblood ("Youngblood").

5. Youngblood served as an assistant principal at Northwood High School from approximately 2018 through the summer of 2024 and became principal in approximately July or August 2024.

6. Before becoming principal, Youngblood had years of administrative familiarity with Plaintiff and direct knowledge that Plaintiff previously had challenged her treatment of him as disparate or discriminatory.

7. In approximately September or October 2023, Youngblood issued Plaintiff written discipline concerning what Plaintiff understood to be a first-time matter. Plaintiff complained that discipline was being applied unequally and subsequently submitted a written statement raising disparate-treatment and discrimination concerns involving Youngblood.

8. Plaintiff alleges that Youngblood therefore knew, before becoming his principal, that Plaintiff had accused her of unequal and discriminatory treatment.

9. During the 2025–2026 school year, Youngblood exercised principal-level supervisory and administrative authority over Plaintiff on Defendant's behalf.

10. Plaintiff further alleges that Youngblood made or materially participated in relevant school-level administrative responses involving Plaintiff and employees Mrs. Paula Justice ("Justice"), Ms. Elizabeth Farrell ("Farrell"), and Mr. George Raley ("Raley").

11. Plaintiff does not allege that those employees engaged in identical conduct. Their circumstances are relevant because they permit comparison of how the same principal-level decisionmaker exercised workplace-removal and disciplinary authority.

12. The immediate events giving rise to this action began in December 2025 with Plaintiff's concerns regarding assessment practices and academic integrity.

13. On December 4, 2025, Exceptional Children ("EC") teacher Paula Justice brought a student to Plaintiff's classroom. During the interaction, Plaintiff understood Justice to state that educators sometimes needed to do work for students or substantially assist students so they could pass.

14. Plaintiff objected because he believed giving answers or doing assessed work for students compromised academic integrity. During that same interaction, the

student admitted cheating on an assessment and, according to Plaintiff, stated that the student had received answers from Justice.

15. On December 5, 2025, Justice entered Plaintiff's classroom during instruction and continued the disagreement concerning grading, allowable assistance, and assessment practices.

16. Plaintiff directed Justice to leave his classroom four times. Justice did not leave until administrators became involved.

17. Plaintiff did not physically touch or threaten Justice and did not physically touch, threaten, or restrain any student.

18. Plaintiff subsequently met with Youngblood, reported the student's admission and his concerns regarding Justice, and explained his version of the December 4 and December 5 events.

19. Youngblood thereafter directed Plaintiff to leave campus for the remainder of the school day.

20. Defendant later asserted that Justice also departed after coverage was arranged for required EC responsibilities. Plaintiff disputes whether Plaintiff and Justice received equivalent directives or employment treatment.

21. Plaintiff identified Raley as having information relevant to whether Justice actually was required to leave campus. Human Resources did not interview Raley concerning that issue before accepting the administrative explanation that both employees had been released.

22. Following the December events, Plaintiff experienced a marked increase in administrative monitoring. He documented at least seven administrative classroom visits during December 15 through December 18, 2025.

23. Plaintiff alleges that seven administrative visits within four school days substantially exceeded the administrative presence he had experienced earlier in the school year.

24. Defendant later acknowledged increased administrative presence but attributed it to a generalized end-of-semester directive encouraging administrators to spend additional time in classrooms.

25. Plaintiff alleges that Defendant did not meaningfully determine whether other Northwood teachers actually received administrative visits at a rate comparable to Plaintiff.

26. Plaintiff further alleges that administrative scrutiny concerning his grading practices arose after his reporting concerning Justice, even though the grading practices had not previously been documented as a material performance deficiency in his personnel file or prior end-of-year evaluation.

27. On December 22, 2025, Plaintiff submitted a formal Human Resources complaint expressly alleging discriminatory treatment and retaliation, together with related allegations concerning professional misconduct, harassment, classroom interference, and abuse of professional authority.

28. Defendant subsequently expanded its investigation to Plaintiff's 2018 history, his 2023 discrimination-related documentation, the December 2025 events, and broader allegations of recurring discrimination, disparate treatment, harassment, and retaliation.

29. Assistant Superintendent for Human Resources Dr. Kelly Batten ("Batten") issued Defendant's written investigative findings on March 18, 2026.

30. Defendant concluded that insufficient evidence existed to substantiate unlawful discrimination or retaliation.

31. Plaintiff alleges that those conclusions are undermined by Defendant's failure to interview identified witnesses possessing direct or comparator knowledge, including the student Plaintiff reported had admitted cheating, School Testing Coordinator Gina Bacheler, Math Department Head Matthew DeCerbo, George Raley, and other relevant witnesses.

32. Defendant's investigator also expressly acknowledged confusion concerning school testing procedures central to Plaintiff's allegations but did not interview the School Testing Coordinator before issuing definitive findings.

33. Defendant's findings further characterized the relevant Justice incident as "isolated in nature," while elsewhere stating that the "isolated incident" of an EC teacher entering another teacher's classroom was "not unique to this specific instance."

34. Plaintiff alleges that Defendant failed adequately to reconcile those descriptions.

35. Defendant simultaneously implemented corrective measures addressing testing consistency and classroom access, including reinstatement of a testing-center structure and restricting Justice from returning to Plaintiff's classroom.

36. Plaintiff does not contend that those measures independently prove intentional discrimination. He alleges that they are relevant to the credibility of Defendant's simultaneous characterization of the underlying circumstances as isolated or unsupported.

37. Plaintiff challenged the investigation through Defendant's administrative procedures, ultimately appealing to Superintendent Dr. Anthony Jackson ("Jackson") and the Board.

38. Plaintiff repeatedly identified omitted witnesses, comparator evidence, incomplete factual development, and inconsistencies in Defendant's investigation.

39. Neither the Superintendent review nor the Board proceedings resulted in interviews of the central witnesses Plaintiff had identified.

40. A Board Panel conducted Plaintiff's appeal hearing on May 27, 2026 and issued a decision on May 29, 2026 upholding Administration's findings and decision.

41. Plaintiff thereafter preserved his objection that the hearing notice framed the issue more narrowly than the full scope of his Policy 1750/7220 appeal.

42. Board counsel advised Plaintiff that the Panel regarded Administration's investigation as impartial, prompt, and thorough and considered the administrative matter closed.

43. Plaintiff subsequently filed an EEOC Charge alleging race discrimination, sex discrimination, and retaliation.

44. On June 9, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights.

45. Plaintiff timely brings this action following receipt of that Notice.

## II. JURISDICTION AND VENUE

46. This Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under Title VII, 42 U.S.C. §§ 2000e et seq.

47. This Court has jurisdiction over Plaintiff's Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(3).

48. Plaintiff seeks legal and equitable relief authorized by Title VII and applicable federal law.

49. Venue is proper in the Middle District of North Carolina because the employment practices complained of occurred principally in Chatham County, North Carolina, where Plaintiff worked for Defendant at Northwood High School.

50. Defendant operates Northwood High School and maintains employment and administrative records relevant to this action in North Carolina.

## III. PARTIES AND RELEVANT DECISIONMAKERS

51. Plaintiff Dr. Derrick Barbee is an adult resident of North Carolina, is African American and male, and therefore belongs to protected classes under Title VII based upon race and sex.

52. Defendant hired Plaintiff as a mathematics teacher at Northwood High School in August 2016.

53. Plaintiff was qualified for his position and alleges that he performed his material teaching responsibilities at a satisfactory or better level throughout the period relevant to his timely claims.

54. Defendant Chatham County Board of Education is the local board of education responsible for operation of Chatham County Schools and was Plaintiff's employer within the meaning of Title VII, and, at all times relevant to this action, employed more than 500 employees.

55. At all relevant times, the administrators identified herein acted within the course and scope of their employment or administrative authority on behalf of Defendant.

56. Dr. Justin Bartholomew ("Bartholomew") served as principal during the early portion of Plaintiff's Northwood employment, through approximately July 2018.

57. Dr. Brad Walston ("Walston") served as principal beginning approximately during the summer of 2018 and continuing through approximately the summer of 2024.

58. Youngblood served as an assistant principal from approximately 2018 until becoming principal in approximately July or August 2024.

59. At all times relevant to Plaintiff's timely claims, Youngblood exercised supervisory and administrative authority over Plaintiff and made the December 5, 2025 school-level decision directing Plaintiff to leave campus.

60. Plaintiff alleges that Youngblood also made or materially participated in the relevant administrative responses involving Justice, Farrell, and Raley.

61. Batten served as Assistant Superintendent for Human Resources and conducted or supervised Defendant's investigation.

62. Jackson served as Superintendent and reviewed Plaintiff's administrative appeal.

63. Plaintiff does not name Youngblood, Batten, Jackson, Justice, Farrell, Raley, Bacheler, DeCerbo, Walston, Bartholomew, Mrs. Cora Long ("Long"), or other individual employees as Title VII defendants. Their conduct and knowledge are alleged as acts, decisionmaking, comparator evidence, historical evidence, or investigative activity attributable or relevant to Defendant.

## IV. RELEVANT EMPLOYMENT BACKGROUND AND PRIOR PROTECTED ACTIVITY

64. Plaintiff began teaching mathematics at Northwood High School in August 2016 and understood his responsibilities to include teaching assigned State-required curricular content and maintaining academic and assessment integrity.

65. During Plaintiff's early employment, school administrators also evaluated and criticized aspects of his instructional methodology.

66. Mathematics teacher Long worked at Northwood during at least part of approximately August 2015 through June 2019.

67. Plaintiff alleges that during relevant periods Long taught approximately four of the eight Math 3 curricular units, constituting approximately one-half of the prescribed course content.

68. Plaintiff alleges that Long's curricular scope was known within the mathematics department and known or reasonably knowable to school-level administrators, yet Plaintiff is unaware of Long receiving discipline concerning the omitted curricular units.

69. Instead, Plaintiff alleges that school administrators praised Long as an exemplary teacher and promoted an instructional approach she used known as "Connected Classroom," "connected teaching," or substantially similar terminology.

70. Plaintiff alleges that Bartholomew encouraged him to teach more like Long, although Plaintiff did not fully adopt Long's instructional approach and continued teaching the required curricular units assigned to his courses.

71. During Walston's later tenure, Northwood teachers participated in peer observations known as NEWS/CHARGE walkthroughs or substantially similar terminology. Plaintiff alleges that Walston praised Long's classroom practices and encouraged Plaintiff to observe her classroom as exemplary.

72. Plaintiff does not allege that Long discriminated against him or that the Long circumstances independently constitute a timely Title VII violation. He alleges this history as background concerning Defendant's differing evaluation of teachers' professional practices.

73. Defendant also investigated employment issues involving Plaintiff in approximately 2018, and Defendant's 2026 Human Resources investigation later reviewed portions of that history. Plaintiff likewise pleads those matters principally as background.

74. Plaintiff's 2023 interaction with Youngblood is materially different because Plaintiff alleges that it constitutes prior discrimination-related protected activity known to the later principal-level decisionmaker.

75. In approximately September or October 2023, while Youngblood was an assistant principal and Walston was principal, Youngblood issued Plaintiff written discipline concerning what Plaintiff understood to be a first-time matter.

76. Plaintiff believed the response was inconsistent with Defendant's treatment of comparable first-time employee issues and raised unequal application of discipline during a meeting involving Youngblood and Walston.

77. Plaintiff recalls Walston acknowledging that Plaintiff had raised a valid concern regarding unequal application of discipline and acknowledging concerns about the effect of the manner in which the matter had been handled on professional relationships.

78. Plaintiff thereafter prepared a signed written statement expressly raising disparate-treatment and discrimination-related concerns involving Youngblood and provided or attempted to provide the statement to Youngblood and Walston.

79. Plaintiff requested that the statement be maintained in appropriate personnel records.

80. Plaintiff alleges that Youngblood therefore possessed actual notice in 2023 that Plaintiff had accused her of disparate and discriminatory treatment.

81. On December 22, 2025, Plaintiff reviewed his personnel file with Youngblood present and discovered that the 2023 discrimination/disparate-treatment statement was not contained in the file.

82. Plaintiff subsequently supplied that document to Batten during Defendant's 2026 investigation.

83. Defendant attempted to determine whether the document's formal receipt could be independently verified through electronic records and contacted Walston concerning the matter.

84. Defendant stated that available electronic records did not establish formal receipt or processing of the document.

85. Plaintiff alleges that the absence of an electronic transmission record does not establish that Youngblood did not personally receive or know about the complaint.

86. Plaintiff alleges the 2023 events as evidence of protected activity, decisionmaker knowledge, motive, context, and retaliation rather than as an independently timely discrimination claim.

## V. TESTING-MATERIAL COMPARATOR AND DECEMBER 2025 EVENTS

87. In October 2025, Plaintiff administered an NC Math 3 check-in for which School Testing Coordinator Gina Bacheler provided student login slips or cards.

88. Plaintiff alleges that Bacheler did not initially tell him that the slips had to be returned or were secure testing materials requiring collection.

89. After some slips were discarded and Plaintiff subsequently learned that they needed to be returned, Plaintiff immediately retrieved discarded slips, collected additional slips from students, and returned the materials.

90. Bacheler thereafter sent Plaintiff an email concerning "Secure Test Materials" and copied Principal Youngblood.

91. Plaintiff later learned that Math Department Head DeCerbo also had administered the same or substantially similar Math 3 check-in.

92. Plaintiff alleges that DeCerbo told him that he discarded comparable login slips without returning them.

93. On information and belief, DeCerbo did not receive comparable corrective communication escalated to Youngblood.

94. Plaintiff identified DeCerbo as a comparator during Defendant's later review, but Human Resources did not interview him before rejecting the testing-material disparate-treatment allegation.

95. Human Resources likewise did not interview Bacheler before issuing conclusions concerning testing procedures and Plaintiff's related allegations.

96. Plaintiff alleges that the DeCerbo comparison is probative because it concerns the same or substantially similar materials, assessment process, school, and mathematics department.

97. Plaintiff acknowledges that discovery may reveal legitimate differences concerning instructions, knowledge, timing, or circumstances, but alleges that

Defendant failed meaningfully to investigate whether such differences existed before rejecting the comparator allegation.

98. On December 4, 2025, Justice brought a student to Plaintiff's classroom and made statements Plaintiff understood to mean that teachers sometimes needed to do work for students or provide substantial assistance so students would pass.

99. Plaintiff objected because he believed such practices compromised academic integrity. Plaintiff's concern arose in a school environment in which academic cheating had also been identified as a broader faculty concern. In the 2026 North Carolina Teacher Working Conditions Survey, approximately 85.71% of responding Northwood High School educators agreed or strongly agreed that cheating was a problem at the school, compared with approximately 40.43% districtwide and 39.57% statewide. Plaintiff alleges this evidence as context for the reasonableness and significance of his academic-integrity concerns, not as independent evidence of discrimination.

100. During the interaction, the student admitted cheating on an assessment and, according to Plaintiff, stated that the student had received answers from Justice.

101. Plaintiff regarded the student's statement as direct evidence concerning the integrity of an assessment administered outside Plaintiff's direct supervision.

102. On December 5, Justice entered Plaintiff's classroom approximately twenty minutes into instruction and continued the disagreement concerning grading and allowable assessment assistance.

103. Plaintiff believed the discussion disrupted instruction and directed Justice to leave the classroom four times.

104. Justice did not leave until administrators arrived.

105. Plaintiff did not physically touch or threaten Justice and did not physically touch, threaten, or restrain any student.

106. Plaintiff subsequently met with Youngblood, reported the student's admission and his concerns regarding Justice, and explained his account of the events.

107. Youngblood thereafter directed Plaintiff to leave campus for the remainder of the school day.

108. Plaintiff complied and did not lose salary for the remainder of the day.

109. Plaintiff nevertheless alleges that being affirmatively removed from his workplace constituted disadvantageous employment treatment affecting his professional environment and standing.

110. Plaintiff understood that Justice remained at school after Plaintiff was required to leave.

111. Defendant subsequently asserted that Justice also was released from campus after coverage was arranged for required EC responsibilities and departed less than approximately forty-five minutes after Plaintiff.

112. Plaintiff disputes whether the two employees received equivalent directives or treatment.

113. Plaintiff alleges that the exact instructions, timing, and circumstances concerning both departures can be determined through discovery.

114. Plaintiff identified Raley as having information relevant to whether Justice actually was directed to leave, but Human Resources did not interview Raley concerning the issue before accepting Youngblood's explanation.

115. Plaintiff alleges that the omission is particularly significant because Youngblood's own treatment of Plaintiff was one of the administrative actions under review.

## VI. PLAINTIFF'S REPORTS AND SUBSEQUENT SCRUTINY

116. Plaintiff prepared a written statement concerning the December 4 and December 5 events and provided it to Youngblood, together with historical context indicating that he did not believe EC-related classroom interference was entirely isolated.

117. School administrators thereafter gathered some student statements, but Plaintiff alleges that the central student was not meaningfully interviewed concerning the student's reported admission of cheating before administration concluded that direct evidence of cheating was absent.

118. On December 11, Plaintiff met with Youngblood and Assistant Principal Marques Harrington and was advised that no disciplinary letter concerning the December 5 incident would be placed in his personnel file.

119. Plaintiff nevertheless continued raising concerns regarding the separate-setting assessment practices and the student's reported admission.

120. On December 12, Youngblood acknowledged in writing Plaintiff's concerns regarding EC teachers and the level of assistance provided during separate-setting assessments and stated that administrators would investigate further.

121. On December 19, Youngblood informed Plaintiff that she concluded there was no direct evidence that students cheated on the test.

122. Plaintiff alleges that the conclusion was difficult to reconcile with his contemporaneous report that a student personally admitted cheating and that the student was an obvious source of direct evidence.

123. Defendant's subsequent Human Resources investigator did not directly interview that student before issuing the final findings.

124. Plaintiff also alleges that administrative presence in his classroom increased markedly following the December events.

125. Plaintiff documented at least seven administrative classroom visits during the four school days of December 15 through December 18.

126. Plaintiff alleges that this monitoring substantially exceeded what he had experienced earlier in the school year.

127. Defendant later acknowledged increased classroom visits but attributed them to a generalized end-of-semester instruction encouraging administrators to spend additional time in classrooms.

128. Plaintiff does not dispute that such a general instruction may have existed but alleges that Defendant did not determine whether similarly situated Northwood teachers actually received monitoring comparable to Plaintiff's seven visits in four days.

129. Plaintiff alleges that administrator calendars, walkthrough records, observation systems, and related records can objectively determine whether his monitoring was routine or materially greater than that of other teachers.

130. Plaintiff further alleges that administrators began scrutinizing his grading practices following the Justice dispute, although those practices had not previously been documented as a material performance deficiency in his personnel file or prior evaluation.

131. Plaintiff alleges that the timing of the grading scrutiny and concentrated classroom monitoring constitutes circumstantial evidence relevant to discriminatory or retaliatory motive.

## VII. FORMAL DISCRIMINATION COMPLAINT AND INVESTIGATION

132. On December 22, 2025, Plaintiff submitted a formal written complaint to Defendant's Human Resources Department expressly alleging discriminatory treatment and retaliation, together with related workplace concerns.

133. Plaintiff specifically identified conduct involving Youngblood and described the December events, his removal from campus, the treatment of Justice, increased monitoring, student-witness concerns, and relevant historical disparate-treatment issues.

134. Plaintiff also stated that he was reporting his concerns in good faith.

135. On January 14, 2026, Plaintiff met with Batten and Human Resources representative Norma Boone and provided extensive supporting documentation.

136. Defendant thereafter expressly expanded its investigation to the current December 2025 events, the 2018 history, Plaintiff's 2023 documentation, and broader recurring allegations of discrimination, harassment, disparate treatment, and retaliation.

137. Defendant therefore recognized that Plaintiff was alleging a broader historical context rather than only a single interpersonal dispute.

138. For the principal current dispute, Batten interviewed Plaintiff and Youngblood and additionally relied upon documents and previously gathered statements.

139. Human Resources did not directly interview the student Plaintiff reported had admitted cheating, all additional student witnesses identified by Plaintiff, Bacheler

concerning testing procedures, DeCerbo concerning the testing-material comparison, or Raley concerning the disputed treatment of Justice.

140. Plaintiff alleges that these individuals were material witnesses because the student possessed direct knowledge concerning the cheating allegation; Bacheler possessed direct knowledge concerning testing procedures; DeCerbo possessed alleged comparator knowledge concerning the same testing materials; and Raley possessed information relevant to whether Plaintiff and Justice received equivalent treatment.

141. Plaintiff alleges that omission of these witnesses materially limited Defendant's ability to test competing accounts and comparator evidence.

## VIII. INVESTIGATIVE DEFICIENCIES AND PRETEXT

142. Batten issued Defendant's Summary Investigation Response on March 18, 2026 and stated that Defendant applied a preponderance-of-the-evidence standard.

143. Defendant concluded that insufficient evidence existed to establish unlawful discrimination or retaliation.

144. Plaintiff alleges that the credibility of those findings must be evaluated against the evidence Defendant chose not to collect.

145. Defendant relied upon concepts such as insufficient evidence, available evidence, and absence of direct evidence while failing to directly interview the student Plaintiff reported had admitted cheating and failing to interview other material witnesses identified by Plaintiff.

146. Plaintiff alleges that an asserted evidentiary absence is materially less persuasive when the investigator declines to question identified witnesses capable of supplying the missing evidence.

147. Defendant's report also expressly acknowledged "confusion for the investigator regarding the general test procedures used by faculty across the school."

148. Testing procedures were directly relevant to Plaintiff's academic-integrity and disparate-treatment concerns.

149. Bacheler was Northwood's School Testing Coordinator and possessed direct knowledge concerning testing procedures and materials.

150. Human Resources nevertheless issued definitive conclusions without interviewing her.

151. Plaintiff alleges that the combination of acknowledged uncertainty concerning a central procedure and failure to interview the official responsible for that procedure undermines Defendant's description of its investigation as comprehensive and reliable.

152. Defendant's findings also contained materially different characterizations of the Justice incident.

153. The report acknowledged that Justice previously had "pushed-in" to classrooms without request but concluded that the December incident was "isolated in nature."

154. Elsewhere, the report described the "isolated incident of the EC teacher entering another teacher's classroom" as "not unique to this specific instance," referring to Northwood's structure of co-teaching and collaboration.

155. Plaintiff recognizes that Defendant may distinguish ordinary classroom entry from disruptive conduct but alleges that this does not resolve the complete issue because Plaintiff's complaint concerned substantially more than physical entry into a classroom.

156. Plaintiff's complaint concerned interruption during instruction, repeated requests that Justice leave, her refusal to immediately comply, public challenges to Plaintiff's professional judgment, and statements Plaintiff believed normalized improper assessment assistance.

157. Plaintiff alleges that Defendant's varying descriptions constitute relevant evidence concerning the consistency and credibility of its stated explanation.

158. Defendant also implemented corrective measures following Plaintiff's concerns, including reinstating a previously used testing-center structure intended to improve consistency in testing accommodations and assistance and restricting Justice from returning to Plaintiff's classroom.

159. Plaintiff does not allege that those measures independently prove intentional discrimination.

160. Plaintiff alleges that they demonstrate Defendant identified actual circumstances requiring operational correction and are relevant when evaluating Defendant's simultaneous characterization of Plaintiff's concerns as isolated or unsupported.

161. Plaintiff further alleges that Defendant relied substantially upon Youngblood to explain employment decisions that Plaintiff had accused Youngblood herself of making discriminatorily or retaliatorily.

162. Plaintiff alleges that a neutral investigation should have tested material disputed portions of Youngblood's account against available independent witnesses and documentary records.

## IX. COMPARATOR AND DISPARATE-TREATMENT EVIDENCE

163. Defendant's treatment of other employees is relevant to determining whether it consistently applied the employment standards asserted to justify Plaintiff's treatment.

164. Plaintiff does not allege that each comparator engaged in identical conduct. The comparators illuminate different aspects of Defendant's asserted standards and Youngblood's exercise of administrative discretion.

165. Justice provides Plaintiff's closest same-incident sex comparison because Justice is female and Plaintiff is male, and both participated in the same December 5 dispute at the same school, on the same day, under the authority of the same principal.

166. Youngblood directed Plaintiff to leave campus. Defendant later asserted that Justice also departed after EC coverage was arranged, but Plaintiff disputes whether Justice received an equivalent directive or equivalent employment treatment.

167. Defendant did not interview Raley concerning information Plaintiff identified as relevant to that dispute.

168. Plaintiff alleges that the exact directives, timing, and treatment received by Plaintiff and Justice can be determined from Defendant's records and witness testimony.

169. Farrell provides additional circumstantial evidence concerning Youngblood's exercise of immediate workplace-removal authority.

170. Farrell is a female teacher employed by Defendant at Northwood High School.

171. On information and belief, Farrell told a Black student words to the effect of "go back to Africa," and the student reported the racially derogatory statement to school administrators.

172. Plaintiff knows that the Black student and another student were removed from Farrell's classroom following the reported incident.

173. Plaintiff alleges that the students' removal constitutes relevant factual context concerning administration's knowledge of and response to the matter.

174. On information and belief, Youngblood made or materially participated in the principal-level response to the Farrell incident, and Farrell was not directed to leave campus for a comparable period while the reported incident was addressed or reviewed.

175. Plaintiff does not allege that Farrell received no confidential discipline whatsoever and recognizes that personnel action may not have been visible to him.

176. Plaintiff alleges specifically that the immediate workplace-removal response differed from the response Youngblood imposed upon Plaintiff.

177. Plaintiff does not contend that the Farrell and Dr. Barbee incidents involved identical conduct but alleges that they are relevant to determining whether the same principal applied workplace-removal standards consistently to male and female employees.

178. Plaintiff expects discovery to establish the information available to Youngblood, policies applied, investigation performed, and actual administrative disposition of the Farrell incident.

179. Raley provides separate evidence concerning the range of disciplinary responses employed by Youngblood.

180. Plaintiff understands that, during a separate incident, a student pushed Raley, Raley thereafter physically restrained the student, Youngblood made or materially participated in the principal-level response, and Raley was suspended.

181. Plaintiff does not rely upon Raley as a sex comparator because Plaintiff and Raley are both male and does not contend that physical restraint of a student is equivalent to Plaintiff's nonphysical professional dispute.

182. Plaintiff alleges that Raley's incident is relevant to identifying the range of responses Youngblood used when determining whether alleged employee conduct warranted continued presence at school, departure, suspension, or another action.

183. Raley separately possesses potential witness information concerning whether Justice actually was required to leave campus on December 5.

184. DeCerbo provides the closer comparison concerning the October testing-material matter.

185. Plaintiff alleges that DeCerbo administered the same or substantially similar Math 3 check-in and discarded comparable login slips, while Plaintiff's own handling of those materials was escalated through communication copied to Youngblood.

186. On information and belief, DeCerbo's alleged conduct did not receive comparable administrative escalation.

187. Defendant did not interview DeCerbo before rejecting Plaintiff's disparate-treatment allegation.

188. Plaintiff alleges that discovery concerning these comparators will permit an objective comparison of conduct, information available to Youngblood, prior disciplinary history, applicable policies, investigation performed, and employment outcomes.

189. Plaintiff alleges that such evidence is relevant to whether legitimate differences explain Defendant's treatment or whether Defendant's asserted reasons are pretextual.

## X. ADMINISTRATIVE APPEALS AND EEOC EXHAUSTION

190. Plaintiff timely challenged Assistant Superintendent for Human Resources Dr. Kelly Batten's March 18, 2026 findings and submitted a formal administrative appeal to Superintendent Dr. Anthony Jackson pursuant to Board Policy 1750/7220, challenging both the adequacy of Defendant's investigation and its substantive conclusions.

191. Plaintiff's appeal was not limited to Board Policy 1710/4020/7230. Plaintiff challenged, among other matters, the omission of material witnesses, failure to develop comparator evidence, failure to evaluate the cumulative history and pattern alleged by Plaintiff, deficiencies in the investigative process, and Defendant's analysis of retaliation and protected activity under Policy 1760/7280 and applicable federal law.

192. Policy 1750/7220 defines an employee grievance to include allegations that state or federal law, regulations, Board policy, or administrative procedure have been violated, misapplied, or misinterpreted, as well as allegations that a decision adversely affected an employee's employment status or terms or conditions of employment.

193. Policy 1750/7220 requires the written grievance to identify the specific decisions or actions at issue and the laws, regulations, policies, or procedures allegedly violated, misapplied, or misinterpreted, and further provides that the written statement of grievance "must remain the same throughout all steps of the grievance procedure."

194. The policy further requires written decisions setting forth the decision and reasons therefor, requires the Board and administration to cooperate with the grievant in investigating the grievance and furnishing pertinent information, and provides at the Superintendent-review stage that the Superintendent or designee "shall conduct any investigation necessary before arriving at a decision."

195. Plaintiff does not allege that Policy 1750/7220 required a separate investigation for every policy citation or legal authority identified in his grievance. Plaintiff alleges, however, that Defendant did not provide a reasoned written disposition explaining the exclusion or disposition of properly raised retaliation, policy, procedural, or legal issues that were not included within the stated scope of subsequent review.

196. Superintendent Jackson upheld the Human Resources findings without directly interviewing the student Plaintiff reported had admitted cheating, School Testing Coordinator Gina Bacheler, Math Department Head Dr. DeCerbo, George Raley, or other witnesses Plaintiff had identified as possessing material information.

197. Plaintiff alleges that Jackson's review did not cure the material-witness omissions, undeveloped comparator evidence, cumulative-analysis deficiencies, or retaliation issues Plaintiff specifically presented for review.

198. Plaintiff thereafter appealed Jackson's final administrative decision to the Board pursuant to Policy 1750/7220, again identifying omitted witnesses, comparator evidence, incomplete factual development, failure to evaluate the cumulative record, investigative deficiencies, and failure to fully address retaliation and other policy and legal issues. Plaintiff requested an independent investigation or further hearing and expressly reserved his rights and remedies under federal law, state law, and Board policy.

199. Policy 1750/7220 provides for a mandatory Board appeal where an employee alleges a violation of specified federal or state law, regulation, State Board policy or procedure, or local Board policy or procedure, or alleges that a specific decision adversely affected the employee's employment status or terms or conditions of employment.

200. Notwithstanding the broader matters presented in Plaintiff's grievance and appeal, the Board's hearing notice expressly stated that "[t]he issue before the Board panel" was whether there had been a violation of Board Policy 1710/4020/7230, Discrimination and Harassment Prohibited by Federal Law.

201. Plaintiff alleges that the stated scope of the Board hearing was materially narrower than his Policy 1750/7220 appeal, which raised not only Policy 1710/4020/7230 but also retaliation and protected activity, Policy 1760/7280, grievance-procedure issues under Policy 1750/7220, comparator evidence, investigative deficiencies, academic-integrity and testing-related concerns, professional-ethics concerns, and related legal protections.

202. Plaintiff alleges that the narrowing is relevant because Policy 1750/7220 requires the written statement of grievance to remain the same throughout the grievance procedure and provides Board review for specified allegations involving violations of law or policy and adverse employment decisions.

203. A Board Panel conducted Plaintiff's appeal hearing on May 27, 2026 and issued its final decision on May 29, 2026, upholding Administration's findings and decision.

204. On June 1, 2026, Plaintiff promptly submitted signed correspondence entitled "Scope of Appeal Under Policy 1750/7220," requested that it be provided to the Board Chair and Panel members and included in the administrative record, and requested a written response concerning the scope of his appeal.

205. In that correspondence, Plaintiff expressly stated that his appeal "was not limited to Board Policy 1710/4020/7230" and identified, among other matters, Policy 1760/7280, Policy 1742/5060, Policy 1750/7220, protected activity and retaliation, whistleblower-related protections and good-faith reporting, disparate treatment, investigative deficiencies, academic-integrity and testing-related concerns, professional-ethics and employee-conduct concerns, and related federal, state, and local protections.

206. Plaintiff further stated that Superintendent Jackson's May 4, 2026 determination had framed the matter solely as whether the Human Resources investigation satisfied Policy 1710/4020/7230 and that the Board's hearing notice subsequently adopted that limited issue for review.

207. Plaintiff therefore contemporaneously asserted that the issue presented to and decided by the Board Panel was substantially narrower than his Policy 1750/7220 appeal and that, although the Board had rendered a final decision regarding Policy 1710/4020/7230, the additional policy violations, protections, and concerns raised in his appeal had not been addressed in the Board's final decision or otherwise resolved through the Board's review process.

208. On June 2, 2026, Board counsel Adam Mitchell responded on behalf of the Board Panel for the stated purpose of addressing any confusion or uncertainty concerning the Panel's decision.

209. Mitchell stated that the Panel's decision upholding Administration's "findings and decision" included a determination that Administration's investigation was "impartial, prompt, and thorough under the circumstances," that the Panel had addressed "all of the issues properly raised" in Plaintiff's appeal, and that the Panel considered the matter closed.

210. Plaintiff responded that same day, acknowledged the Panel's position, and expressly disputed its conclusion. Plaintiff reiterated that the hearing notice had

expressly limited the issue presented for review to Policy 1710/4020/7230 and stated that it therefore remained unclear how the additional policy violations, protections, and concerns raised in his Policy 1750/7220 appeal had been reviewed and resolved.

211. Plaintiff alleges that the June 1 and June 2 correspondence demonstrates that he contemporaneously identified, objected to, and preserved the scope issue immediately following the Board's final decision and that Defendant had actual notice of Plaintiff's position before this litigation.

212. Plaintiff does not allege that Defendant's asserted failure to comply with Policy 1750/7220 independently establishes liability under Title VII. Plaintiff alleges that the scope of the administrative review, Defendant's treatment of the additional retaliation and policy issues, and Defendant's response to Plaintiff's contemporaneous objection are relevant to the completeness and neutrality of Defendant's investigation and review, Defendant's knowledge of Plaintiff's protected complaints, the consistency and credibility of Defendant's explanations, and pretext.

213. Plaintiff thereafter pursued his federal administrative remedies before the Equal Employment Opportunity Commission ("EEOC") and filed EEOC Charge of Discrimination No. 433-2026-02386.

214. Plaintiff's signed Charge identified him as African American and male and expressly alleged discrimination based upon race and sex and retaliation for protected activity.

215. The Charge described, among other matters, the December 4 student's reported admission of cheating, the December 5 classroom incident, Plaintiff's four requests that Justice leave his classroom, Youngblood's decision directing Plaintiff to leave campus, Defendant's failure to interview the student, Plaintiff's testing-related disparate-treatment allegation, increased administrative scrutiny and monitoring, and Defendant's investigation of Plaintiff's complaints.

216. The Charge further identified Batten's characterization of the December Justice incident as "isolated in nature" while elsewhere describing the "isolated incident" of an EC teacher entering another teacher's classroom as "not unique to this specific instance," together with Batten's acknowledged confusion concerning testing procedures, Defendant's reinstatement of a testing-center structure, and

Defendant's failure to interview witnesses Plaintiff identified as possessing material information.

217. Plaintiff signed his EEOC Charge on May 29, 2026.

218. On June 9, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights concerning Charge No. 433-2026-02386.

219. The EEOC advised that it would not proceed further with its investigation and expressly made no determination concerning whether further investigation would establish violations of the statutes enforced by the EEOC.

220. The EEOC further advised that its closure of the administrative investigation did not mean Plaintiff's claims lacked merit and did not certify that Defendant was in compliance with applicable federal law.

221. The EEOC issued Plaintiff notice of his right to institute a civil action against Defendant.

222. Plaintiff commenced this action within ninety days following his receipt of the EEOC's Determination and Notice of Rights and has therefore timely exhausted the administrative prerequisites applicable to the Title VII claims asserted herein.

## XI. FACTS SUPPORTING PRETEXT AND DISCRIMINATORY OR RETALIATORY MOTIVE

223. Defendant has asserted or is expected to assert legitimate, nondiscriminatory and nonretaliatory explanations for the employment actions challenged herein.

224. Plaintiff alleges that those explanations are pretextual in whole or in part when the evidence is considered collectively.

225. Youngblood had prior knowledge that Plaintiff had accused her of disparate or discriminatory treatment before she became Plaintiff's principal.

226. Youngblood later possessed increased authority over Plaintiff and made the December 5 decision requiring Plaintiff to leave the workplace.

227. Plaintiff alleges that Youngblood was also the common principal-level decisionmaker or material participant in the treatment of the comparator employees identified above.

228. Plaintiff identified DeCerbo as a testing-material comparator, but Defendant rejected the allegation without interviewing DeCerbo.

229. Defendant concluded that direct evidence did not establish Plaintiff's cheating allegation without directly interviewing the student Plaintiff reported had personally admitted cheating.

230. Defendant acknowledged confusion concerning testing procedures but did not interview Bacheler, the School Testing Coordinator.

231. Defendant accepted the administrative explanation concerning Justice's departure without interviewing Raley, whom Plaintiff identified as having independent information relevant to that issue.

232. Defendant characterized the December Justice incident as "isolated in nature," while elsewhere describing the "isolated incident" of an EC teacher entering another teacher's classroom as "not unique to this specific instance," which Plaintiff alleges is relevant to the consistency and credibility of Defendant's characterization of the underlying circumstances.

233. Defendant simultaneously implemented corrective testing and classroom-access measures addressing circumstances Plaintiff had reported.

234. Plaintiff experienced at least seven administrative classroom visits in four days following the December events, while Defendant relied upon a generalized administrative explanation without meaningfully comparing his monitoring with other teachers.

235. Administrative scrutiny concerning Plaintiff's grading practices also arose after the dispute even though Plaintiff alleges the grading issue had not previously been documented as a material performance deficiency.

236. Defendant expanded its investigation to historical allegations of discrimination and disparate treatment while substantially characterizing the immediate December circumstances as an isolated professional disagreement.

237. During the same general period in which Defendant was investigating and reviewing the matters underlying this action, Plaintiff separately engaged in documented employment-related advocacy concerning Defendant's local compensation structure and its treatment of doctoral-level credentials. That advocacy involved senior District officials, including Jackson and Batten, and Youngblood was copied on related correspondence.

238. In responding to that separate compensation matter, Batten represented that Defendant's local supplement structure had been "applied consistently each year in accordance with our Board of Education policy," while Jackson subsequently advised Plaintiff that the requested modification would not be included in Defendant's local budget request for that year. Plaintiff does not assert the doctoral-compensation dispute as a separate claim in this action.

239. Plaintiff alleges that these contemporaneous employment-related communications are relevant to the extent they bear upon the knowledge and communications of decisionmakers involved in the challenged treatment; Defendant's assertions concerning consistency in the application of its employment policies, practices, and decisionmaking; the treatment of Plaintiff's employment-related concerns by the same or overlapping administrators; and the credibility and consistency of Defendant's stated explanations. Plaintiff alleges that such matters may bear upon his existing allegations of discriminatory or retaliatory motive and pretext and may be explored through discovery to the extent permitted by the Federal Rules of Civil Procedure.

240. Plaintiff alleges that these circumstances, considered cumulatively, support a reasonable inference that Defendant's asserted explanations are not the complete or true explanation for the treatment challenged herein.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII
## 42 U.S.C. § 2000e-2

241. Plaintiff incorporates paragraphs 1 through 240 as though fully set forth herein.

242. Plaintiff is African American, Defendant knew Plaintiff's race, Plaintiff was qualified for his position, and Plaintiff satisfactorily performed his material employment responsibilities.

243. Defendant subjected Plaintiff to disadvantageous treatment concerning the terms, conditions, or privileges of his employment, including the December 5 workplace-

removal decision, selective administrative escalation, heightened scrutiny, and related treatment described herein.

244. Plaintiff alleges that race was a motivating factor in Defendant's treatment.

245. Plaintiff relies upon comparator and circumstantial evidence, including Youngblood's common-decisionmaker role, the DeCerbo testing-material comparison, Defendant's differing administrative responses to other employee incidents, Youngblood's prior knowledge of Plaintiff's discrimination complaint, and the investigative deficiencies described herein.

246. Defendant has asserted or is expected to assert legitimate nondiscriminatory reasons for the challenged actions.

247. Plaintiff alleges that those reasons are pretextual in whole or in part based upon Defendant's failure to investigate material comparator and direct witnesses, acknowledged testing-procedure uncertainty, failure to interview Bacheler, inconsistent descriptions of the Justice incident, corrective measures addressing circumstances Defendant simultaneously minimized, and other facts alleged herein.

248. Plaintiff alleges that race was at least a motivating factor in the challenged employment treatment.

249. Defendant's unlawful conduct caused Plaintiff compensable injury, and Plaintiff is entitled to the legal and equitable remedies authorized by Title VII.

## COUNT II
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII
## 42 U.S.C. § 2000e-2

250. Plaintiff incorporates paragraphs 1 through 240 as though fully set forth herein.

251. Plaintiff is male, Defendant knew Plaintiff's sex, Plaintiff was qualified for his position, and Plaintiff satisfactorily performed his material employment responsibilities.

252. Plaintiff alleges that Defendant subjected him to disadvantageous employment treatment because of sex.

253. Justice provides Plaintiff's closest same-incident comparison because Justice is female and Plaintiff is male, both participated in the same December 5 dispute at the same school and under the same principal, yet Plaintiff alleges they did not receive equivalent workplace-removal treatment.

254. Farrell provides additional circumstantial sex-comparator evidence because she is female and, on information and belief, was not immediately required to leave campus following a reported employee incident despite Youngblood's involvement in the administrative response.

255. Plaintiff does not allege that the Farrell and Dr. Barbee incidents involved identical misconduct but alleges that the different responses are relevant to whether Youngblood applied workplace-removal standards differently based upon sex.

256. Plaintiff alleges that Defendant's asserted neutral explanations are pretextual in whole or in part for the reasons alleged herein.

257. Plaintiff alleges that sex was at least a motivating factor in the challenged treatment.

258. Defendant's unlawful conduct caused Plaintiff compensable injury, and Plaintiff is entitled to the legal and equitable remedies authorized by Title VII.

**COUNT III**
**RETALIATION IN VIOLATION OF TITLE VII**
**42 U.S.C. § 2000e-3(a)**

259. Plaintiff incorporates paragraphs 1 through 240 as though fully set forth herein.

260. Plaintiff engaged in protected discrimination-related opposition activity when, in approximately 2023, he expressly complained of disparate and discriminatory treatment involving Youngblood.

261. Plaintiff alleges that Youngblood knew of that complaint.

262. Plaintiff again engaged in protected activity through his December 22, 2025 Human Resources complaint expressly alleging discriminatory treatment and retaliation and through his subsequent participation in Defendant's discrimination investigation, administrative appeals, and EEOC proceedings.

263. Defendant and the relevant decisionmakers knew of Plaintiff's protected activity.

264. Plaintiff alleges that the December 5, 2025 treatment followed Youngblood's knowledge of Plaintiff's 2023 discrimination-related protected activity, while the subsequent heightened monitoring, grading-related scrutiny, investigation-related treatment, and other post-December 22 conduct followed Plaintiff's renewed protected discrimination and retaliation complaint

265. Plaintiff alleges that Defendant subjected him to conduct that would dissuade a reasonable employee from engaging in protected discrimination activity, including heightened administrative scrutiny, unusually concentrated classroom monitoring, selective administrative escalation, grading-related scrutiny that had not previously been documented as a material performance deficiency, and differential application of administrative standards.

266. Plaintiff alleges that the timing and sequence of events, Youngblood's prior knowledge, same-decisionmaker history, concentrated monitoring, comparator treatment, and investigation deficiencies support an inference of causation.

267. Plaintiff alleges that Defendant's failure to meaningfully compare his actual monitoring with other teachers materially weakens Defendant's generalized explanation for the classroom visits.

268. Plaintiff further alleges that Defendant's failure to meaningfully investigate identified direct and comparator witnesses supports an inference that Defendant did not neutrally evaluate his discrimination and retaliation allegations.

269. Plaintiff alleges that Defendant's asserted legitimate reasons are pretextual in whole or in part.

270. Plaintiff does not base this Title VII retaliation claim solely upon his reporting of academic cheating or academic-integrity concerns.

271. Plaintiff bases this Count upon his discrimination-related protected activity, including the 2023 discrimination complaint, December 2025 discrimination and retaliation complaint, subsequent discrimination-related administrative proceedings, and EEOC activity.

272. Plaintiff alleges that Defendant's retaliatory conduct was causally connected to his protected activity.

273. Defendant's unlawful retaliation caused Plaintiff compensable injury, and Plaintiff is entitled to the remedies authorized by Title VII.

## XII. DAMAGES AND EQUITABLE RELIEF

274. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff alleges emotional distress, humiliation, embarrassment, inconvenience, reputational injury, interference with his professional standing and employment environment, and other compensable injuries established by the evidence.

275. Plaintiff alleges loss of professional opportunities and economic injury only to the extent supported by discovery and admissible evidence.

276. Plaintiff acknowledges that he did not lose salary solely because Youngblood directed him to leave campus on December 5 and does not seek to mischaracterize that fact.

277. Plaintiff alleges, however, that the absence of immediate wage loss does not eliminate other professional or compensable injuries resulting from unlawful discrimination or retaliation.

278. Plaintiff remains employed by Defendant and therefore has a continuing interest in being free from unlawful discrimination and retaliation.

279. Plaintiff seeks appropriate declaratory and prospective equitable relief, including correction or removal of employment records to the extent any such records are established to have resulted from unlawful discrimination or retaliation.

280. Plaintiff seeks all compensatory and equitable monetary relief authorized by Title VII, including compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses established by the evidence, together with back pay, lost compensation, lost benefits, front pay in lieu of other appropriate equitable relief, and other economic relief to the fullest extent established and legally authorized.

281. Plaintiff seeks prejudgment and post-judgment interest, taxable costs, and reasonable attorney's fees to the extent authorized by law.

282. Plaintiff does not seek punitive damages against Defendant under Title VII to the extent such damages are unavailable against a governmental entity and does not seek duplicative recovery for the same injury.

283. Plaintiff expressly reserves separate rights or remedies available under North Carolina law that are not asserted in this federal Complaint.

## XIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

284. Enter judgment in Plaintiff's favor and against Defendant;

285. Declare that Defendant violated Title VII by discriminating against Plaintiff because of race;

286. Declare that Defendant violated Title VII by discriminating against Plaintiff because of sex;

287. Declare that Defendant violated Title VII by retaliating against Plaintiff because of protected activity;

288. Award Plaintiff compensatory damages, including damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, in the maximum amount established by the evidence and permitted by law;

289. Award Plaintiff back pay, lost compensation, lost benefits, front pay in lieu of other appropriate equitable relief, and all other economic relief to the fullest extent established by the evidence and authorized by law;

290. Enter all appropriate declaratory, equitable, and prospective relief necessary to make Plaintiff whole and prevent recurrence of the unlawful practices established in this action;

291. Enjoin Defendant from engaging in further unlawful discrimination or retaliation against Plaintiff;

292. Order appropriate correction or removal of employment records established to have resulted from unlawful discrimination or retaliation;

293. Award prejudgment and post-judgment interest where authorized;

294. Award Plaintiff taxable costs and reasonable attorney's fees to the extent authorized by law; and

295. Grant such other and further legal or equitable relief as the Court deems just and proper.

## XIV. DEMAND FOR JURY TRIAL

296. Plaintiff demands trial by jury on all claims and issues for which a jury trial is authorized.

Respectfully submitted this 24th day of August, 2026.

Dr. Derrick Barbee

Dr. Derrick Barbee
Plaintiff, Pro Se
662 Legacy Falls Drive South
Chapel Hill, North Carolina 27517
Telephone: (336) 848-7578
Email: derrickbarbee@gmail.com